**SO ORDERED.**

**SIGNED this 5 day of May, 2023.**



_____
**Joseph N. Callaway**
**United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

IN RE:

**DAVID DOV GROSS**                                          Case No. 22-517-5-JNC
                                                             Chapter 7
　　　Debtor
_____

**SMARTSKY NETWORKS, LLC,**

v.                                                           Adv. Pro. No. 22-00109-5-JNC

**DAVID DOV GROSS,**
　　　Defendant.

### ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

Before the court are the cross motions for summary judgment filed by plaintiff SmartSky Networks, LLC ("SmartSky" or "SSN"), and defendant-debtor David Dov Gross ("David Gross" or "Debtor"). SmartSky filed its motion for summary judgment and supporting memorandum of law (Dkts. 29 and 30, "SmartSky's motion") on March 3, 2023. Debtor also filed his motion for summary judgment along with a Declaration of Debtor and supporting memorandum of law (Dkts. 31 and 32, "Debtor's motion") on March 3, 2023. The parties each filed a response on March 31, 2023 (Dkt. 40, "SmartSky's Response" and Dkt. 41, "Debtor's Response.") SmartSky filed a reply brief on April 11, 2023 (Dkt. 42, "SmartSky's Reply"). A hearing was scheduled for and held on

April 18, 2023, in Greenville, North Carolina. Christopher Blake appeared on behalf of SmartSky, and Britney Millisor appeared for the Debtor.

After hearing arguments from counsel, the court denied Debtor's motion for summary judgment, and took SmartSky's motion for summary judgment under advisement, noting Debtor's willfulness had been established but the court had to further consider whether maliciousness had been established. For the reasons stated below, the Debtors' motion for summary judgment is denied, and SmartSky's motion for summary judgment is granted in part and denied in part.

## PROCEDURAL HISTORY

On March 10, 2022, Debtor filed a voluntary petition pursuant to Chapter 7 of the Bankruptcy Code, Case No. 22-00517-5-JNC. On March 21, 2022, Debtor filed a summary of assets and liabilities (BK Dkt. 12), which listed the Final Judgment entered against him on February 7, 2022, in the United States District Court for the Middle District of North Carolina ("MDNC") in *SmartSky Networks, LLC v. Wireless Systems Solutions, LLC*, Case No. 1:20-CV-00834 (the "MDNC" case). The Final Judgment was entered based on Plaintiff's Motion to Confirm Final Arbitration Award (MDNC Dkt. 166). Debtor contends the Final Judgment is void due to the MDNC lacking subject matter jurisdiction and therefore appealed the matter to the Fourth Circuit Court of Appeals contending the MDNC lacked subject matter jurisdiction to enter the Final Judgment and Permanent Injunction. *SmartSky Networks, LLC v. DAG Wireless Ltd*, No 22-1253, Fourth Circuit Court of Appeals. The appeal remains pending.

On June 13, 2022, Plaintiff SmartSky initiated this Adversary Proceeding objecting to the dischargeability under 11 U.S.C. § 523(a)(6) of a debt for willful and malicious injuries caused by Debtor. The debt arises from a two-week arbitration, resulting in a final award in SmartSky's favor against Debtor for $2,548,892.04 for attorneys' fees, costs of arbitration, and sanctions (the

2

"Award") confirmed in the MDNC case. SmartSky filed a first amended complaint on June 17, 2022 (Dkt. 4). On June 22, 2022, an Order of Discharge was entered under 11 U.S.C.§ 727 (BK Dkt. 37). Debtor answered the First Amended Complaint on August 12, 2022 (Dkt. 10), denying the allegations of the First Amended Complaint and contending the debt is dischargeable as there was no finding of willful and malicious injury in the Award.

## JURISDICTION

The court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 151 and 1334 and is authorized to hear this case under the General Order of Reference entered August 3, 1984, by the United States District Court for the Eastern District of North Carolina. The primary matters raised in the adversary proceeding make it a core proceeding pursuant to 28 U.S.C. § 157(b), and the court has statutory authority to enter a final judgment as to those matters. In addition, the parties consented to this court entering final judgment on all matters raised in the adversary proceeding. *See* Pretrial Scheduling Order of September 22, 2022 (Dkt. 25). The court consequently has constitutional authority to enter final judgment in this adversary proceeding. *Wellness Int'l Network, Ltd., v Sharif*, 575 U.S. 665, 135 S. Ct. 1932, 1947 (2015).

## BACKGROUND

SmartSky provides broadband air-to-ground ("ATG") wireless communications systems for use on aircraft. In 2017, SmartSky contracted with Wireless Systems Solutions, LLC ("WSS"), which is controlled by Laslo and Susan Gross, to further develop SmartSky's existing proprietary ATG products that SmartSky had been developing for several years (Award, ¶¶ 100-104). The business relationship was governed by several agreements between the parties, including a contract known as the "Teaming Agreement" (See, e.g., Award, at ¶ 133). During the performance of these agreements, Debtor, who is the son of Laslo and Susan Gross and worked for WSS, formed DAG

Wireless Ltd. And DAG Wireless, LLC (collectively "DAG"), which provided much of WSS's product development efforts for the contracts with SmartSky. (Award ¶¶ 12, 173-176).

The honeymoon did not last long though, and on September 10, 2020, SmartSky filed a verified complaint against Debtor, Laslo Gross, Susan Gross, WSS, and DAG ( "Respondents") in the MDNC, alleging ongoing breaches of the intellectual property and confidentiality provisions of the Teaming Agreement as well as misappropriation of trade secrets, unfair and deceptive trade practices, and false advertising. Four days later, SmartSky filed a Statement of Claim with the American Arbitration Association (the "AAA") asserting arbitration claims against WSS for damages arising out of its breach of contract (the "Arbitration").

DAG filed a motion to dismiss or compel arbitration of SmartSky's claims in the MDNC case, and WSS moved the MDNC court to compel arbitration of all claims and counterclaims between SmartSky and WSS. The MDNC court granted WSS's motion finding that the Teaming Agreement required all claims, other than claims for interim injunctive relief, between SmartSky and WSS to be arbitrated (Award ¶ 43.) By January 13, 2021, SmartSky and Respondents had agreed to consolidate all claims and counterclaims in the Arbitration and to be bound by the results (Award, ¶ 48). The arbitration hearing occurred from May 10 through May 21, 2021, in Charlotte, North Carolina. The arbitration panel (the "Tribunal") heard from nine fact witnesses and four expert witnesses, and 348 exhibits were entered into evidence (Awards ¶¶ 77-79).

### FINDINGS OF THE ARBITRATION PANEL

On October 1, 2021, the Tribunal issued its Award consisting of an 81-page, single-spaced opinion with 427 detailed findings of fact and conclusions of law (Dkt. 33, Ex. A). By order and judgment filed February 7, 2022, United States District Judge Thomas Schroeder confirmed the arbitration award and entered final judgment against the Respondents in the MDNC case (subject

to the appeal). Among the Tribunal's findings are the following determinations that particularly relate to Debtor:

1. WSS is a family business, managed by Laslo and Susan Gross. Ownership was held by Susan Gross (99%) and her son Michael Gross (1%) until August 3, 2020, when Susan Gros transferred her interest to the Gross Family Protection Trust. August 3, 2020 is the same date that WSS received SmartSky's letter notifying WSS of material breaches of the parties' agreements. (Award ¶ 169.)

2. Debtor has been an employee of WSS and signed a non-disclosure agreement with SmartSky in 2019 on behalf of WSS. (Award ¶ 172.)

3. DAG Israel was formed February 27, 2018, and DAG USA was formed June 19, 2019 (Award ¶ 173). WSS was DAG Israel's only customer (Award ¶ 176.)

4. In August 2020, DAG Israel issued a press release announcing "the launch of the Velocity XG System, a new wireless broadband solution for inflight connectivity." The release represented that the system was "FCC and DO-160 certified" and that it was currently commercially available. (Award ¶ 178). The photos in the press release were photos of the products WSS built for SmartSky (Award ¶ 179.)

5. David Gross communicated with [REDACTED] regarding the Velocity XG system (Award ¶ 182). He also communicated, by using a WSS email address with [REDACTED] regarding marketing the Velocity XG system. On behalf of DAG Israel, he communicated with [REDACTED] and sent to [REDACTED] the Velocity XG Package. (Award ¶ 184.)

6. In November 2020, David Gross was quoted in an article in CTech reporting that DAG Israel had announced the launch of its Velocity XG System. (Award ¶ 188.)

7. David Gross admitted that the assertion that Velocity XG Package was a commercially available, existing system, was false at the time the advertising occurred and at the time of the arbitration hearings. (Award ¶ 189.)

8. In April 2021, David Gross, along with Laslo Gross, made a detailed zoom presentation to several people regarding the supposedly existing ATG wireless system. During the presentation, Laslo and David Gross "bad mouthed" SmartSky, asserted that their system would be better than SmartSky's, represented that their system could be demonstrated in six weeks and that a nationwide network could be up in 14 weeks (Award ¶ 191.) After that zoom call, an important potential customer of SmartSky put a proposed contract on hold in order to evaluate the WSS/DAG system. (Award ¶ 192.)

9. Prior to its relationship with SmartSky, the evidence showed WSS "never developed an ATG system for communications with aircraft; that WSS had limited experience with ground stations designed for LTE systems using beamforming technology; that WSS had never developed ABR for aircraft; that WSS did not have experience developing networks

operating in the unlicensed 2.4 GHz band; and that WSS was not experienced in getting products certified by the FAA or the FCC. *See, e.g.,* Tr.: 187-88; 759-62, 818-22; 1784-93." (Award ¶ 248.)

10. "The record further establishes that the press release and marketing materials prepared and distributed by Respondents (a) caused confusion in the marketplace about whether there was a new competitor offering an ATG System and (b) made raising capital more difficult for SSN. RX 1505 pp. 50-52. At least one significant, existing commercial prospect for SSN delayed proceeding with SSN's ATG Products because Respondents offered it their 'own' competing ATG System." (Award ¶ 289.)

11. Respondents engaged in a "pattern of deceptive conduct to misappropriate SSN's Intellectual Property, including by using pseudonyms, aliases, impersonations, and fake companies (*e.g.,* Tr.: 1743, 1745; CX-212); issuing a false press release and marketing materials concerning a supposedly FCC- and FAA-certified ATG System that did not in fact exist (Tr.: 1921, 1923; CX-152) and not retracting such press release (Tr.: 1925, 2189); and 'bad mouthing' the SSN ATG System to prospective customers." (Award ¶ 292.)

12. The Tribunal entered injunctive relief not only against WSS but also against DAG USA and DAG Israel as instrumentalities of WSS and the Grosses in their personal capacity and as officers of the corporate respondents. (Award ¶ 297.)

13. DAG Israel and DAG USA are alter egos of WSS (Award ¶¶ 299, 300, 303, 308.)

14. The Grosses "misappropriated and conspired to misappropriate, SSN's trade secrets in violation of the DTSA and TSPA,[1] and thus are liable for common law conspiracy to violate such statutes." (Award ¶ 321.)

15. "The record established herein, when viewed as a whole, evidences that the Grosses **intentionally and maliciously**[2] misappropriated Claimant's trade secrets by, *inter alia*, marketing SSN's ATG Products as their own to SSN's main competitor and customer prospects, thus entitling SSN to an award of reasonable attorneys' fees against the Grosses for their misappropriation. *See ¶¶ 360-64, infra*." (Award ¶ 324, emphasis added.)

16. "Respondents used alter egos and fictious names to circumvent contractual restrictions in the Teaming Agreement; Respondents issued a false press release and misleading marketing materials to create market confusion about competing ATG systems; Respondents denigrated SSN to business prospects; Respondents discouraged vendors from working with SSN; and Respondents made false reports to the FAA of defects in SSN's ABR units." (Award ¶ 328.)

---

[1] Federal Defend Trade Secret Act, 18 U.S.C. § 1836 (the "DTSA") and the North Carolina Trade Secrets Protection Act, N.C. Gen. Stat. § 24-66-152, et seq. (the "TSPA").

[2] "'Willful' means intentionally," as opposed to "accidental or unavoidably." *Silicon Knights, Inc. v. Epic Games, Inc.*, 917 F. Supp. 2d 503, 518 (E.D.N.C. 2012). "'Malicious' means an action taken in a manner which evidences a reckless and wanton disregard of the plaintiff's rights." *Id.* at 519 (omitting internal quotation and citation). (Award ¶ 323.)

17. "[W]e hold that Respondents' unfair and deceptive acts **in trying to steal the core of SSN's business through the unfair acts** here described merit entry of a permanent injunction for the same reasons articulated with respect to WSS', DAG USA's, and DAG Israel's breaches of the Intellectual Property and Confidential Information provisions of the Teaming Agreement. *See* ¶¶ 287-97, *supra*." (Award ¶ 331, emphasis added.)

18. "Here, Respondents *falsely* advertised in both a press release and other marketing literature that they had developed an FAA and FCC certified ATG System (Velocity XG), which in fact did not exist, and passed off SSN ATG Products as their own. *See* ¶¶ 178-93, *supra*. And Respondents have admitted doing so. *See, e.g.*, ¶ 189, *supra*." (Award ¶ 336.)

19. The advertising at issue was deemed an "exceptional case" of false advertising under the Lanham Act (Award ¶ 342.)

20. SmartSky is entitled to a permanent injunction against the Respondents (Award ¶ 348.)

21. "The Grosses did not merely use SSN's trade secrets; they did so in a manner designed to evade detection, by using alter egos and pseudonyms. The Grosses specifically offered SSN's trade secrets to SSN's primary competitor, GoGo; specifically targeted prospects that SSN had actual and prospective relationship with, such as [REDACTED] and sought to sow confusion in the marketplace about the availability of marketing literature to industry press outlets purporting to pass of SSN's ATG System as their own and that of the companies they controlled. See ¶¶ 178-93, *supra*." (Award ¶ 363.)

22. "Based on the nature and content of the conduct of Respondents, including with respect to the press release and related activities referenced in ¶¶ 178-86 and 188-91, *supra*, we find the circumstances here to constitute an 'extraordinary case' of false advertising. The false advertising here goes well beyond simply overstating an attribute or making a false statement about a competing product. After being paid nearly $30 million by SSN to develop ATG Products, **Respondent WSS withheld delivery and simultaneously acted in concert with its alter egos, DAG USA and DAG Israel, to issue a press release offering the SSN ATG Products for sale under a new name, Velocity XG, as if they were their own.** *See* ¶¶ 178-93, *supra*. **The record establishes that all three of the Grosses were personally involved in those activities**. In addition to passing-off the ATG Products, the press release inaccurately claimed regulatory certifications had been obtained, knowingly conveying demonstrably false information as to advanced development and imminent availability. Respondents then distributed the press release to, inter alia, prospective purchasers with which SSN was already engaged." (Award ¶ 366, emphasis added.)

23. "The record herein establishes that **the result of Respondents' unlawful activity was, as Respondents' specifically intended**, confusion in the marketplace as to the availability of competing ATG Systems, interference with important negotiations SSN was having with REDACTED, and loss of investor confidence in SSN." (Award ¶ 367, emphasis added).

7

24. "Nor is there any dispute that Respondents did not retract the false press announcement about the Velocity XG system—even though they acknowledged that it was false and misleading." (Award ¶ 373.)

<b><u>CROSS MOTIONS FOR SUMMARY JUDGMENT</u></b>

I. **Debtor's Motion for Summary Judgment and Supporting Declaration**

Debtor moves for summary judgment, primarily arguing the following: (1) the Final Judgment is void and of no effect because the MDNC lacked subject matter jurisdiction; (2) the finding by the Arbitration panel of "willful and malicious" was based on the definition applicable to the DTSA and the TSPA, and that definition differs from the definition under Section 523(a)(6) of the Bankruptcy Code; and (3) The Tribunal's findings regarding willful and malicious acts fall short of the conduct required by Section 523(a)(6), and plaintiff fails to allege or present facts to support those requirements. In support of Debtor's motion, he attached a Declaration, signed under penalty of perjury, declaring the following, in pertinent part:

a) Debtor is the principal of DAG Israel. (Decl. ¶ 5).

b) On August 11, 2020, DAG Israel issued a press release about a product known as the Velocity XG System and around the same time prepared a presentation brochure for the system. No such system existed at that time or anytime thereafter. (Decl. ¶¶ 7, 8).

c) Debtor believed other companies did similar press releases that were not accurate, and he did not think this practice was unusual or would harm SmartSky. (Decl. ¶ 9).

d) He did not believe or intend for the press release and the presentation brochure to injure SmartSky, and he did not believe they could injure SmartSky since the system did not exist. (Decl. ¶ 12).

e) Further, he did not believe he could or would injure SmartSky by issuing the press release. (Decl. ¶¶ 12, 13).

### II. SmartSky's Motion for Summary Judgment

SmartSky also moved for summary judgment, asserting that collateral estoppel precludes Debtor from relitigating the Award and necessarily results in a determination that the debt owed to SmartSky is nondischargeable under Section 523(a)(6). SmartSky contends the Tribunal found that the debt resulted from a willful and malicious injury and that finding is precluded from being relitigated by Debtor in this proceeding according to the doctrine of collateral estoppel.

## STANDARD OF REVIEW

### I. Summary Judgment

A party is entitled to summary judgment if the undisputed facts established in the record demonstrate there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "The court must consider whether a reasonable jury could find in favor of the non-moving party, taking all inferences to be drawn from the underlying facts in the light most favorable to the non-movant …." *Humboldt Express, Inc. v. The Wise Co. (In re Apex Express Corp.)*, 190 F.3d 624, 633 (4th Cir. 1999) (citations omitted). The moving party has the initial burden of proving the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the initial burden is met, the opposing party must respond and show the existence of factual disputes sufficient to advance a genuine issue to trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). The court can then decide if "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

In analyzing SmartSky's motion for summary judgment, the court is mindful that SmartSky bears the ultimate burden of proof at trial.

> Where, as here, the summary judgment movant also bears the burden of proof at trial, that party "faces a challenge more difficult than otherwise," because it "must do more than put the issue into genuine doubt; indeed, [it] must remove genuine doubt from the issue altogether." *Hoover Color Corp. v. Bayer Corp.*, 199 F.3d 160, 164 (4th Cir. 1999) (*quoting Alan's of Atlanta, Inc. v. Minolta Corp.*, 903 F.2d 1414, 1425 (11th Cir. 1990)). For this reason, summary judgment is not often granted under such circumstances. *Turner v. Ferguson*, 149 F.3d 821, 824 (8th Cir. 1998).

*Mid Atl. Blended Prod., Inc. v. MonoTech Int'l, Inc.*, No. 1:05CV00571, 2008 WL 11355375, at *2 (M.D.N.C. June 3, 2008).

## II. Section 523(a)(6) Standard

A debt is non-dischargeable for willful and malicious injury. Section 523(a)(6) provides, in pertinent part, that: "(a) A discharge under Section 727, 1141, 1228(a), 1228(b) or 1328(b) does not discharge an individual debtor from any debt —[…] (6) for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6).

"The word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S. Ct. 974, 977, 140 L. Ed. 2d 90 (1998). *See also In re Muhs*, 923 F.3d 377, 385 (4th Cir.), *cert. denied sub nom. TKC Aerospace Inc. v. Muhs*, 140 S. Ct. 607, 205 L. Ed. 2d 387 (2019 ) ("The Supreme Court and this court have decided that a debt arising from an injury attributable to mere negligent or reckless conduct does not satisfy the 'willful and malicious' requirement of (a)(6); in addition, it is not enough that the conduct underlying the injury was intentional. Rather, the debtor must have engaged in such conduct with the actual intent to cause injury." *(citations omitted)*.) "To qualify as malicious, the debtor must have acted with substantial certainty that harm would result or with a subjective motive to cause harm." *In re Coley*, 609 B.R. 298, 311 (Bankr. E.D.N.C. 2019), *citing In re Cobham*, 528 B.R. 283 (Bankr. E.D.N.C. 2015). The maliciousness standard in discharge objection cases is met if a debtor

10

acts "with substantial certainty that harm will result or with a subjective motive to cause harm."

*Select Bank & Trust Co. v Crawford, (In re Crawford),* Case No. 21-1296-5-JNC, Adv No 21-00092-5-JNC, 2022 WL 1509463 *11 (Bankr. E.D.N.C. May 12, 2022).

> It is the injury, and not the act giving rise to the injury, that must be intended by the debtor in order for the debt arising from the injury to be nondischargeable under 523(a)(6). *In re O'Quinn*, 374 B.R. 171, 182 (Bankr. M.D.N.C. 2007); *citing Geiger*, 523 U.S. at 60-64. However, "malicious" does not equate with malice or ill will, but rather with a "deliberate" or "intentional" injury that is "wrongful and without cause or excuse." *In re Vito*, 598 B.R. 809, 825 (Bankr. D.Md. 2019); *citing Craig v. Corbin*, No. GJH-15-2656, 2016 WL 4082628, at *9 (D.Md. July 7, 2016), *First Nat'l Bank of Maryland v. Stanley* (*In re Stanley*), 66 F.3d 664, 667 (4th Cir. 1995), *et al*. It is the debtor's subjective state of mind that is relevant, and malice can be found implicitly through the "acts and conduct of the debtor in the context of the surrounding circumstances." *In re Estrin*, C/A No. 14-04795-DD, 2016 WL 691506, at *15 (Bankr. D.S.C. Feb. 19, 2016); *quoting First Nat'l Bank of Maryland, v. Stanley*, 66 F.3d at 668.

*In re Crawford*, No. 21-01296-5-JNC, 2022 WL 1509463, at *12 (Bankr. E.D.N.C. May 12, 2022).

### III.  Collateral Estoppel

Collateral estoppel principles apply in discharge exception proceedings pursuant to Section 523(a). *Grogan v. Garner*, 498 U.S. 279, n. 11 (1991). In the Fourth Circuit,

> [a] party seeking to rely on the doctrine of collateral estoppel is obliged to establish five elements: (1) that "the issue sought to be precluded is identical to one previously litigated" ("element one"); (2) that the issue was actually determined in the prior proceeding ("element two"); (3) that the issue's determination was "a critical and necessary part of the decision in the prior proceeding" ("element three"); (4) that the prior judgment is final and valid ("element four"); and (5) that the party against whom collateral estoppel is asserted "had a full and fair opportunity to litigate the issue in the previous forum" ("element five").

*Collins v. Pond Creek Mining Co.,* 468 F.3d 213, 217 (4th Cir. 2006).[3]

---

[3] The elements are similar under North Carolina law:
(1) the issues must be the same as those involved in the prior action, (2) the issues must have been raised and actually litigated in the prior action, (3) the issues must have been material and relevant to the disposition of the prior action, and (4) the determination of the issues in the prior action must have been necessary and essential to the resulting judgment.

*Champion Pro Consulting Grp., Inc. v. Impact Sports Football, LLC*, 976 F. Supp. 2d 706, 714 (M.D.N.C. 2013) *quoting State v. Summers,* 351 N.C. 620, 623, 528 S.E.2d 17, 20 (2000).

Issue preclusion bars "'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." *Taylor v. Sturgell*, 553 U.S. 880, 892, 128 S. Ct. 2161, 2171, 171 L. Ed. 2d 155 (2008) (internal citations omitted). However, "[t]he doctrine of collateral estoppel does not bar the relitigation of factual issues 'where the party against whom the doctrine is invoked had a heavier burden of persuasion on that issue in the first action than he does in the second, or where his adversary has a heavier burden in the second action than he did in the first.'" *Collins*, 468 F.3d at 217–18 (internal citations omitted). "Although collateral estoppel may well preclude a bankruptcy court from relitigating previously-decided issues, the ultimate issue of dischargeability is a legal issue, and exceptions to discharge are narrowly construed." *In re Muhs*, 923 F.3d 377, 384 (4th Cir. 2019) quoting *In re McNallen*, 62 F.3d 619, 625 (4th Cir. 1995). An arbitration award is entitled to the same preclusive effect as a judgment. *See Data Mountain Solutions, Inc. v. Giordano (In re Giordano)*, 472 B.R. 313, 325 (Bankr. E.D. Va. 2012); see also *Whitlock v. Triangle Grading Contractors Dev., Inc.,* 205 N.C.App. 444, 448, 696 S.E.2d 543, 546 (2010) ("Preclusive effect is not limited to court proceedings; it arises in the same manner from arbitration awards.")

## ANALYSIS

Prior to the Debtor's chapter 7 filing, the parties arbitrated the original dispute and are bound by the specific findings made in the arbitration panel's decision. *SmartSky v. Wireless Systems Solutions*, Case No. 1:20-CV-834, Order at 4 (M.D.N.C. Feb. 7, 2022) ("On January 13, 2021, following Procedural Order 8, the parties agreed to consolidate all pending claims and counterclaims into the arbitration, and all Defendants agreed to submit to the jurisdiction of the Tribunal and to be bound by the arbitration.") The parties now before the court were both in the

12

arbitration. They actually litigated, and the arbitration panel held that the acts of the Respondents, including Debtor, were willful. Collateral estoppel from the arbitration decision therefore applies.[4] However, collateral estoppel is limited in application to issues actually litigated that were critical and necessary to the determination.

### A. Plaintiff's Motion

The Tribunal found and determined, after a multi-week trial, that Debtor acted willfully. Specifically, he, along with the other respondents, (1) intentionally and maliciously misappropriated SmartSky's trade secrets (Award ¶ 324); (2) tried to "steal the core of" SmartSky's business through their unfair acts (Award ¶ 331); passed off SmartSky's ATG products as their own (Award ¶ 331); used SmartSky's trade secrets in a "manner designed to evade detection" (Award ¶ 363); and (5) acknowledged that the press release was both false and misleading but did not retract it (Award ¶ 373). These facts, as found in the binding arbitration between the same parties involved in the current litigation, establish willfulness by the Debtor, as that same term is defined by courts applying § 523(a)(6). Collateral estoppel bars relitigation of the issue of willfulness. *Taylor v. Sturgell*, 553 U.S. 880, 892, 128 S. Ct. 2161, 2171, 171 L. Ed. 2d 155 (2008) (internal citations omitted) (Issue preclusion bars "'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim.").

---

[4] In Debtor's Motion for Summary Judgment, Debtor argues that the Final Judgment of the MDNC court is void and the currently pending appeal at the Fourth Circuit is based on this same argument. However, whether the arbitration decision becomes a judgment is not the initial material question; the first question is whether it is a "debt." If the arbitration is not subject to the jurisdiction of the federal district court (as argued by Debtor in the Fourth Circuit appeal) does not change the underlying validity of the debt; that just changes whether it can be reduced to judgment in state court or federal court, a matter that is immaterial to the bankruptcy court. Numerous debts that were not reduced to judgment pre-bankruptcy filing are subsequently placed before the bankruptcy court for a determination of dischargeability. The parties agreed to arbitrate all their disputes, and arbitration awards are entitled to the same preclusive effect as court proceedings.

The Tribunal also found Debtor's actions to be malicious; however, the definition of maliciousness used by the Tribunal under the DPTA was a lower burden of proof than that required by § 523(a)(6); namely the Tribunal defined malicious as an "action taken in a manner which evidences a reckless and wanton disregard of the plaintiff's rights." *Silicon Knights, Inc. v. Epic Games, Inc.*, 917 F. Supp. 2d 503, 518 (E.D.N.C. 2012). This definition of maliciousness equates with recklessness at a lower burden than that required to prove a debt is nondischargeable under Bankruptcy Code section 523(a)(6). See *In re Coley*, 609 B.R. 298, 311 (Bankr. E.D.N.C. 2019), *citing In re Cobham*, 528 B.R. 283 (Bankr. E.D.N.C. 2015) ("To qualify as malicious, the debtor must have acted *with substantial certainty* that harm would result or with a subjective motive to cause harm.") (emphasis added).

"The doctrine of collateral estoppel does not bar the relitigation of factual issues 'where the party against whom the doctrine is invoked had a heavier burden of persuasion on that issue in the first action than he does in the second, or where his adversary has a heavier burden in the second action than he did in the first.'" *Collins*, 468 F.3d at 217–18 (4th Cir. 2006) (internal citations omitted). Because the definition of maliciousness used by the Tribunal is a lower standard, collateral estoppel does not apply to the finding of maliciousness. Even if the Tribunal's findings reflect facts approaching a malicious or deliberate injury, because exceptions to discharge must be narrowly construed (*In re Rountree*, 478 F.3d 215, 219 (4th Cir. 2007)), this court is presently unable to conclude whether a malicious injury has been established as a matter of law or not.

Additionally, summary judgment is rarely granted when movant has the burden of proof at trial. *Mid Atl. Blended Prod., Inc. v. MonoTech Int'l, Inc.*, No. 1:05CV00571, 2008 WL 11355375, at *2 (M.D.N.C. June 3, 2008). "Where, as here, the summary judgment movant also bears the

burden of proof at trial, that party 'faces a challenge more difficult than otherwise,' because it 'must do more than put the issue into genuine doubt; indeed, [it] must remove genuine doubt from the issue altogether.'" *Id.*, *quoting Hoover Color Corp. v. Bayer Corp.,* 199 F.3d 160, 164 (4th Cir. 1999) (*quoting Alan's of Atlanta, Inc. v. Minolta Corp.*, 903 F.2d 1414, 1425 (11th Cir. 1990)).

**B. Debtor/Defendant's Motion**

Because willfulness is conclusively established and sufficient facts are brought forward from the Tribunal from which a factfinder could find malicious injury, Debtor's cross-motion for summary judgment is denied. As discussed above, while his motion raises a viable argument regarding the differing definition of malice used by the Tribunal versus as defined in section § 523(a)(6), this alone does not foreclose a finding of malicious injury based on the facts found by the Tribunal as a whole when and if presented as evidence before this court at trial. Also, as discussed in footnote four above, whether the Tribunal's decision is presently reduced to final judgment or not is not material so long as a valid debt exists.

Debtor's declaration attempts to manufacture issues of material fact. "A self-serving affidavit, without more, is not sufficient to defeat summary judgment." *Jeandron v. Bd. of Regents of Univ. Sys. of Maryland*, 510 F. App'x 223, 228 (4th Cir. 2013) *citing Nat'l Enterprises, Inc. v. Barnes,* 201 F.3d 331, 335 (4th Cir. 2000).

> "As a general rule, a party may not overcome a motion for summary judgment by submitting an affidavit that conflicts with earlier deposition testimony to create a material issue of fact." *Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984). "If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.... A genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct." *Id.* at 961 (internal citations omitted).

*In re Coley*, 609 B.R. 298, 308 (Bankr. E.D.N.C. 2019).

The Declaration does nothing to attack the "willfulness" element, and the statements therein are not enough to carry his burden in cutting off the material element at the summary judgment stage in light of the detailed evidence cited in the arbitration panel's decision. The Debtor's defenses to the "malicious" element of the objection to dischargeability under 11 U.S.C. § 523(a)(6) are deemed preserved, but his evidence is not sufficient to grant summary judgment on that issue.

## CONCLUSION

For the foregoing reasons, Debtors' motion for summary judgment is DENIED. SmartSky's motion for summary judgment is GRANTED IN PART AND DENIED IN PART; granted inasmuch as the court found issue preclusion establishes willfulness and denied as to maliciousness. Remaining for trial is solely the issue of whether a malicious injury as defined by 11 U.S.C. § 523(a)(6) of the Bankruptcy Code is established. Trial in this matter remains scheduled for July 18, 2023, in Greenville, North Carolina.

**END OF DOCUMENT**