IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:23-CV-731-FL

| | | |
|---|---|---|
| DAVID DOV GROSS, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | ORDER (SEALED)[1] |
| | ) | |
| SMARTSKY NETWORKS, LLC, | ) | |
| | ) | |
| Appellee. | ) | |

This matter is before the court upon appeal of a final order of the United States Bankruptcy Court for the Eastern District of North Carolina denying appellant's motion for a new trial, in adversary proceeding captioned <u>SmartSky Networks, LLC v. David Dov Gross</u>, Case No. 22-00109-5-JNC (Bankr. E.D.N.C.) (the "adversary proceeding"), and upon appellant's motion to seal the case (DE 24). The issues have been briefed fully, and in this posture are ripe for ruling. For the reasons that follow, the bankruptcy court's order is affirmed, and the motion to seal is granted in part and denied in part.

---

[1] Where this order references certain sealed filings, the parties are DIRECTED to file jointly under seal, within 14 days, a copy of this order marked to reflect any perceived necessary redactions with the words "Proposed Redacted" affixed to the captioned title. Upon the court's inspection and presuming its approval, a redacted copy of this order, as proposed by the parties in accordance with controlling authority, will be made a part of the public record. If upon its review the court determines a different approach other than what is proposed may be necessary, notice will be given. If the parties jointly determine no redaction is warranted, they are DIRECTED to file jointly, within that same 14-day period, a notice to that effect. In that event, the clerk will solicit the court's approval to unseal this order before taking additional action.

## STATEMENT OF THE CASE

On March 10, 2022, appellant David Dov Gross ("debtor") filed a voluntary petition under Chapter 7 of the bankruptcy code. (See BR Op. (DE 7–4) 2). Among his liabilities, debtor listed an adverse arbitration award of approximately $2.5 million.[2]

Appellee SmartSky ("creditor") began an adversarial proceeding June 13, 2022. Creditor sought to have the arbitration award declared a nondischargeable debt under 11 U.S.C. § 523(a)(6). At summary judgment, the bankruptcy court narrowed the issue for trial in the adversarial proceeding to just one: whether creditor had established that such debt arose from "a willful and malicious injury" as defined in the bankruptcy code. (See BR Op. 14). Trial took place in July, 2023. Following trial, the bankruptcy court issued findings of fact and conclusions of law, and entered judgment in creditor's favor. Debtor filed pro se a motion for a new trial under Rule 59 on September 8, 2023.[3] The bankruptcy court held a hearing on that motion December 13, 2023, and denied it in a written order the following day.

At trial, a variety of witnesses testified in creditor's case, at whose testimony debtor's appeal mainly is directed, particularly creditor's president and founder, Ryan Stone ("Stone"). (See generally Debtor's Br. (DE 18)).

Debtor filed pro se the instant appeal of the bankruptcy court's denial of his Rule 59 motion December 20, 2023.[4] Debtor filed a brief in support of appeal, relying upon the bankruptcy court

---

[2] Confirmation proceedings are ongoing in the United States District Court for the Middle District of North Carolina. See SmartSky Networks, LLC v. Wireless Systems Solutions, LLC et al., No. 1:20-cv-834-TDS-LPA (M.D.N.C.). That court confirmed the award, which order was reversed on appeal on non-merits grounds. See generally SmartSky Networks, LLC v. DAG Wireless, LTD, 93 F.4th 175 (4th Cir. 2024). Creditor is currently seeking re-confirmation in light of the Fourth Circuit's decision. These proceedings have no impact on the instant appeal.

[3] Though debtor's counsel had not yet withdrawn by the filing of this motion, their motions to withdraw were pending, and debtor filed the motion pro se. (See BR Ct. Mot. (DE 7–8) 1–14).

[4] Debtor had counsel in the bankruptcy court until his attorneys withdrew September 12, 2023.

record, several documents discussing the connection between the telecommunications sector and national security, additional corporate documents from parties involved in this action, and an affidavit from debtor. Thereafter, debtor filed the instant motion to seal the case, which creditor opposes. Creditor then filed a response brief in opposition to the appeal, and debtor replied.[5]

## STATEMENT OF FACTS

The court draws upon the bankruptcy court's recitation of the background facts, which neither party challenges as clearly erroneous.

Creditor produces wireless communications systems for use in travelling aircraft. Creditor contracted with Wireless Systems Solutions, for which debtor worked, to develop such technology along with two other entities which debtor owned, which are referenced together with Wireless Systems Solutions in the record as "DAG."[6] (BR Op. 3–4). The relationship between DAG and creditor soured, and on September 10, 2020, creditor commenced an action against debtor, his parents, and DAG in the United States District Court for the Middle District of North Carolina for a variety of commercial torts, including misappropriation of trade secrets, breach of contract, unfair and deceptive trade practices, and conversion. Creditor pursued these claims in parallel arbitration proceedings against these defendants, to which the parties agreed all claims should be submitted.

The arbitration panel produced an 81-page opinion with 427 findings of fact and conclusions of law, which ultimately found these defendants, including debtor, liable for a variety of misconduct. (See BR Op. 4–8; Arbitration Award (DE 9–3) 85–90). For example, the arbitration panel found these defendants had passed off creditor's technology as their own to

---

[5]    Debtor's parents filed a separate action in this court, pro se, asserting claims based on the underlying events, March 22, 2024. See Gross v. Dodson, No. 5:24-cv-184 (E.D.N.C. Mar. 22, 2024).

[6]    The record does not illuminate what "DAG" stands for. (See BR Op. 4).

3

creditor's competitors and the industry media, (Arbitration Award ¶¶ 250, 320), rendering them liable for breach of contract, misappropriation of trade secrets, unfair and deceptive trade practices, and false advertising. (See Arbitration Award ¶¶ 321, 324, 331, 342, 427). The parties agreed that the panel's findings of fact would be binding in subsequent litigation. (See BR Op. 5 n.3).

In the bankruptcy court's findings of fact and conclusions of law, entered following trial, the bankruptcy court determined that debtor inflicted willful and malicious injury because debtor "purloined [creditor's] [trade secrets] and used them to compete directly with [creditor] in a closed business market environment over a lengthy period of time," such as by "issu[ing] admittedly false press releases . . . using [creditor's] confidential information . . . [including] after being warned in a cease and desist letter, after being sued, and while defending the arbitration proceeding," during which debtor committed "substantial discovery abuses" involving creditor's confidential material. (BR Op. 15).

## COURT'S DISCUSSION

A.   Standard of Review

This court has appellate jurisdiction pursuant to 28 U.S.C. § 158(a) to review the bankruptcy court's orders. "An appeal under subsections (a) and (b) of this section shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts." 28 U.S.C. § 158(c)(2). "On an appeal the district court . . . may affirm, modify, or reverse a bankruptcy court's judgment, order, or decree or remand with instructions for further proceedings." Harman v. Levin, 772 F.2d 1150, 1153 n.3 (4th Cir. 1985).[7] "Legal conclusions are reviewed de novo, but findings of fact will only be set aside if clearly erroneous." Schlossberg v. Barney, 380 F.3d 174, 178 (4th Cir. 2004). A finding of fact is clearly erroneous,

---

[7]   Internal citations and quotation marks are omitted from all citations unless otherwise specified.

4

although there is evidence to support it, when the reviewing court, after carefully examining all the evidence, is "left with the definite and firm conviction that a mistake has been committed." Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985).

> If the [lower court's] account of the evidence is plausible in light of the record viewed in its entirety, the [appellate court] may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.

Id. at 573-74.

B.  Analysis

Debtor argues that the bankruptcy court erred in denying his Rule 59 motion for a new trial on the basis of new evidence.[8] Creditor argues that debtor's motion did not satisfy the demanding standard required for a Rule 59 motion. The court agrees with creditor, and concludes that the bankruptcy court was correct to deny the motion for several independent reasons.

1.  Rule 59 Standard

A Rule 59(e) motion may by granted "only" in three situations: 1) to accommodate an intervening change in controlling law; 2) to account for new evidence not available at trial; or 3) to correct a clear error of law or to prevent manifest injustice. Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc., 674 F.3d 369, 378 (4th Cir. 2012).

The United States Court of Appeals for the Fourth Circuit has established a five-element test for new evidence-based motions under Rules 59 and 60: 1) the evidence must be newly discovered; 2) the movant must have exercised due diligence to discover the new evidence; 3) the evidence is not cumulative or merely impeaching; 4) the evidence is material; and 5) the evidence is likely to produce a new outcome if the case were retried, or would require the judgment to be

---

[8]  Debtor mentions the manifest injustice prong in passing in his brief, but his arguments are all addressed to a Rule 59 motion made on the basis of new evidence. (See Debtor's Br. 20).

amended. See Boryan v. United States, 884 F.2d 767, 771 (4th Cir. 1989). A party may not receive a new trial on grounds of new evidence that is "merely cumulative or impeaching[.]" Id.

2.   Raising New Issues on Appeal

The court addresses at the outset the fact that debtor's argument has changed between its presentation to the bankruptcy court and upon debtor's appeal.

Debtor's motion, as presented to the bankruptcy court, consisted of a series of summarily asserted disagreements with the testimony of witnesses at trial, unsupported by any evidence or legal authority. (See BR Ct. Mot. 1–14). Debtor asked that the bankruptcy court allow him time to obtain unspecified new evidence to correct what debtor saw as inaccurate testimony. (See id. 8, 15). The Rule 59 standard necessarily contemplates the actual production of new evidence. See, e.g., Pacific Ins. Co. v. Am. Nat'l Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998) (collecting cases); Boryan, 884 F.2d at 771 ("newly discovered" (emphasis added)). Rule 59 is not a vehicle through which to mount fishing expeditions to discover evidence a party speculates might exist somewhere. Because debtor did not actually point to any new evidence in his motion before the bankruptcy court, that court's denial of debtor's motion could be affirmed on that ground alone. Debtor did file exhibits after he submitted his motion, in advance of the bankruptcy court's hearing on his motion, but these exhibits do not provide a basis for disturbing the bankruptcy court's analysis and conclusion, as discussed below.

In contrast, debtor's appeal before this court presents, in effect, an entirely different motion from the one submitted to the bankruptcy court. Debtor now presents different exhibits which he contends undermine the testimony of creditor's witnesses at trial.[9]

---

[9] Debtor produced "two short, one-minute videos" at the bankruptcy court's hearing on his motion, (see BR R. 59 Order (DE 1-1) 4 n.4), and debtor filed several exhibits in advance of the hearing, but debtor does not discuss these exhibits in his appeal before this court.

6

Normally, a party cannot present new arguments on appeal that were not first presented below absent "exceptional circumstances." Richardson v. Clarke, 52 F.4th 614, 625 (4th Cir. 2022). Such circumstances are evaluated under a "fundamental error" standard even more searching than the highly demanding plain error standard used in criminal cases. See In re Under Seal, 749 F.3d 276, 285–86 (4th Cir. 2014). Debtor does not attempt to establish any fundamental error within the meaning of this standard. In this posture, this court would therefore normally disregard new arguments, which form the substantial bulk of debtor's appeal. However, because the court concludes that debtor's new arguments do not succeed, and in deference to his pro se status, the court will evaluate both the motion presented to the bankruptcy court, and the new arguments as presented to this court.

3. Motion Before Bankruptcy Court

The court has already noted the fatal deficiency with debtor's original motion: it points to no new evidence, and so fails all five elements of the Boryan standard. Further, the exhibits debtor filed after he submitted his motion to the bankruptcy court, before the hearing thereon, were only impeaching, and in addition and in the alternative, would not have led to a different result at trial, for the reasons discussed below with reference to debtor's exhibits before this court. Such exhibits sought solely to impeach creditor's witnesses on grounds that their testimony lacked corroboration and by drawing unreasonable inferences and innuendos from press release-like documents. (See Debtor's Exs. Part 1 (DE 8–3); Debtor's Exs. Part 2 (DE 8–4); Debtor's Exs. Part 3 (DE 8–5)). This is sufficient grounds to affirm the bankruptcy court's rejection of the Rule 59 motion presented to it.

7

4. Motion Before This Court

The court therefore proceeds to debtor's arguments now presented for the first time on appeal.

Debtor points to two new pieces of evidence: 1) a press release issued in September, 2023 by a third party, "Flexjet," around which much of the tort claims in the underlying action revolved; and 2) an affidavit from debtor. (See Debtor Br. 6–13).[10] For the following reasons, these two new pieces of evidence do not warrant a new trial because they are merely impeaching, and because such evidence would not have resulted in a different outcome.

a. Impeachment

Debtor's new evidence, as explained at length in his brief, is introduced to discredit the testimony of creditor's witnesses at trial. For example, debtor claims, with reference to specific portions of the trial transcript, that the press release discredits Stone's testimony that debtor interfered with negotiations between Flexjet and creditor. (See Debtor's Br. 7–10). Debtor thus attempts merely to discredit Stone's testimony. Debtor also introduces an affidavit to undermine Stone's statement that debtor approached Flexjet and influenced it to cease negotiating with creditor. (See Debtor's Br. 10–13). In his own words, debtor introduces this evidence to highlight what he views as the lack of "corroborating evidence of the veracity of [Stone's] testimony[,]" and to question "the veracity of Plaintiff witness' [sic] testimony." (Debtor's Br. 11, 14). Thus, because the new evidence serves no purpose but to impeach creditor's witnesses, it does not provide a proper basis for a new trial. Boryan, 884 F.3d at 771.

Later in his brief, debtor claims that he does not introduce this evidence for impeachment purposes, but on the very same page states that he does so "to point out the misleading nature of

---

[10] Debtor's brief refers to a few other exhibits in a quick passing reference, but then never mentions them again. The court accordingly confines its analysis to the two exhibits which debtor actually discusses. (See Debtor's Br. 5).

plaintiff witness testimony that was not corroborated by any supporting evidence[,]" and that the new evidence "contradicts and <u>impeaches</u> plaintiff's witness testimony." (Debtor's Br. 18 (emphasis added)). Seeking to undermine a witness's credibility, or to point out gaps or a lack of corroboration in a witness's story, is classic impeachment. <u>See, e.g.</u>, <u>Impeachment</u>, Black's Law Dictionary (11th ed. 2019) ("[t]he act of discrediting a witness . . . [t]he act of challenging the accuracy or authenticity of evidence"). Accordingly, these two pieces of evidence are merely impeaching and thus not a proper basis for relief under Rule 59.

        b.        Different Outcome

In addition, and in the alternative, neither piece of new evidence would have led to a new outcome at trial.

First, debtor's arguments around the press release rely essentially on speculation around the timing of various decisions in which debtor had no part, and by suggesting tenuous inferences from corporate boilerplate typical of a press release. For example, debtor claims that the release's statement that Flexjet's choice of another third party as a business partner followed an 18-month review process demonstrates that Flexjet never would have worked with creditor anyway, because it was intent on working with the other entity all along. (<u>See</u> Debtor's Br. 11–12). The court cannot conclude that such innuendos and unsupported inferences would have resulted in a different outcome at trial.

Debtor's arguments about the press release largely depend on the contentions contained in his affidavit, in which debtor claims that a third-party individual associated with Flexjet told debtor that he had nothing to do with creditor's alleged harms. (<u>See</u> Debtor's Br. 10–11). Debtor's attempted use of this affidavit is unavailing, for two reasons. First, the bankruptcy court made an explicit finding of fact that it found debtor and his testimony "self-serving and incredulous" at

9

trial. (See BR Op. 13). The court cannot conclude that the bankruptcy court would alter this or any other finding based on the submission of a post-hoc affidavit, written by debtor, which provides only hearsay, and which debtor admits has no corroboration. (See generally Debtor's Ex. 27 (DE 22-6)); see also Harvey v. Enoch Pratt Free Library, No. RDB-20-0874, 2022 WL 345038, at *2 (D. Md. Feb. 4, 2022) (rejecting use of self-serving affidavit on motion for reconsideration).

Second, this document is not actually an affidavit, because it is unsigned and unsworn. While the United States Court of Appeals for the Fourth Circuit has not squarely addressed the issue in a published opinion, an affidavit must be sworn to under penalty of perjury, verified, and certified by a notary. See, e.g., Whittaker v. Morgan State Univ., 524 F. App'x 58, 60 (4th Cir. 2013) (distinguishing an unsworn letter from a notarized affidavit and ruling that the former could not be considered at summary judgment); Pfeil v. Rogers, 757 F.2d 850, 858–59 (7th Cir. 1985) (stating that "unsworn documents purporting to be affidavits may be rejected" and that affidavits must be sworn to before a notary); Lumoa v. Potter, 351 F. Supp. 2d 426, 431 (M.D.N.C. 2004) (declining to consider several unsworn documents at summary judgment); Slep-Tone Ent. Corp. v. Powers, No. 5:12-CV-53-BO, 2014 WL 2040104, at *7 (E.D.N.C. Apr. 3, 2014) ("[Party's] purported affidavit fails as an affidavit per se because there is no notarial certification with it."); see also Pratt v. Allbritton, No. 4:16-CV-198-BR, 2018 WL 4610151, at *6–7 (E.D.N.C. Aug. 8, 2018) (examining North Carolina's notarization laws); Affidavit, Black's Law Dictionary (11th ed. 2019) ("A voluntary declaration of facts written down and sworn to by a declarant, usually before an officer authorized to administer oaths." (emphases added)).

The document here contains no oath under penalty of perjury, no notarial verification whatsoever, and indeed not even a signature; it therefore cannot qualify as an affidavit, which

bolsters the court's conclusion that the bankruptcy court virtually certainly would not have credited it.

Debtor cites Schultz v. Butcher, 24 F.3d 626, 631 (4th Cir. 1994) in his reply brief. (See Debtor Reply (DE 28)). This case is inapposite. It dealt with a Rule 60(b)(3) motion seeking a new trial on grounds that a party had deliberately concealed evidence requested in discovery and thereby obtained a favorable judgment through fraud, and conducted an analysis similar to the Brady v. Maryland, 373 U.S. 83 (1963) standard in a civil setting. See Butcher, 24 F.3d at 630–31 (discussing possession by other side, materiality, and favorability). But as debtor repeatedly emphasizes throughout his brief, the press release to which he points was not issued until after trial, and so could not have been produced by anybody before then. As for debtor's affidavit, debtor claims his ability to gather evidence was impaired by an injunction entered by the arbitration panel and by subsequent contempt proceedings sought to enforce it. (See Debtor Reply 4–5). But as the bankruptcy court noted, debtor could have requested discovery relief at any time before trial but elected not to, and debtor makes no showing that he could not have moved for modification of the injunction to permit greater discovery. (See BR R. 59 Order 5). Finally, and in any case, debtor's motion is presented under Rule 59, not Rule 60(b)(3).

In sum, debtor has not produced new evidence sufficient to meet the demanding Rule 59 standard, for three reasons: 1) debtor's motion as presented to the bankruptcy court identified no new evidence, which debtor afterwards supplemented with only impeaching and/or immaterial evidence; 2) debtor's motion before this court presents merely impeaching evidence; and 3) in the alternative such evidence would not have led to a different outcome at trial. See Boryan, 884 F.2d at 771; Pac. Ins. Co., 148 F.3d at 403 ("an extraordinary remedy which should be used sparingly"). Accordingly, the court affirms the bankruptcy court's order denying debtor's motion for new trial.

5.     Motion to Seal

Debtor moves to seal this entire case and all documents within it. This drastic measure is not appropriate without a showing of good cause, and debtor makes no argument in support of sealing. However, the bankruptcy court sealed numerous documents on a more selective basis, and creditor consents to the sealing here of documents already sealed on the bankruptcy court's docket. The court therefore concludes that, because good cause to seal was shown before that court, good cause to extend sealing to the same documents before this court has been shown. Accordingly, docket entries 7–3, 7–6, 7–7, 7–8, 7–9, 8–1, 8–3, 8–4, 8–5, 9–1, 10–5, and 10–9 will be sealed.

## CONCLUSION

For the forgoing reasons, the bankruptcy court's order denying debtor's Rule 59 motion is AFFIRMED. Debtor's motion to seal (DE 24) is GRANTED IN PART and DENIED IN PART. The clerk is DIRECTED to seal the documents identified in the preceding paragraph.

SO ORDERED, this the 13th day of June, 2024.

_____
LOUISE W. FLANAGAN
United States District Judge